**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

FRANK C. LOVE                                                                         **PLAINTIFF**

VS.                                      **NO. 4:14-cv-00715-SWW**

**JONATHON COATS**                                                              **DEFENDANT**

**BRIEF IN SUPPORT OF OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS**

Comes the Plaintiff, Frank C. Love ("Love"), by his attorneys, and for his Brief in

Support of Opposition to Motion for Judgment on the Pleadings, states:

**BACKGROUND**

On December 5th, 2014, this action was filed against Defendant under 42 U.S.C. §1983,

the Arkansas Civil Rights Act of 1993, codified as Ark. Code Ann. §§16-123-101, et seq.

("ACRA"), and for the Plaintiff's pendent state tort claims of malicious prosecution, false

imprisonment, assault, battery, intentional infliction of emotional distress, trespass to land,

conversion, defamation, invasion of Plaintiff's right to privacy, and negligence. During all times

relevant hereto, Plaintiff was a respected citizen, landowner and successful optometrist in

Newport, Arkansas, for over twenty (20) years. As a direct and proximate result of the acts and

omissions to act of Defendant, a Wildlife Officer with the Arkansas Game and Fish Commission

('the Commission"), Plaintiff received personal injuries and damages as follows: loss of liberty

and property including but not limited to, invasion of Plaintiff's right to privacy by Defendant;

loss of income; loss of state constitutional right to hunt, fish and trap wildlife under Amendment

88 to the Arkansas Constitution; loss of use of Plaintiff's truck, four-wheeler and gun; conscious

pain and suffering, including but not limited to, harassment, public humiliation and intimidation

by Defendant; mental anguish and emotional distress associated with unlawful searches and seizures, false arrest, unlawful booking and abuse of process by Defendant; mental anguish, emotional distress and expenses associated with Plaintiff's defense of a malicious prosecution. Plaintiff herein claims compensatory and punitive damages due to Defendant's reckless, malicious, willful and wanton conduct.

Defendant Coats, individually and in his personal capacity, filed an Answer on January 29th, 2015, and admitted that he acted during the relevant time period within the course and scope of his employment as an Arkansas Game and Fish Commission Wildlife Officer. [Answer, pp.2, ¶5]

A Final Scheduling Order has been issued in this case wherein discovery shall be completed no later than July 17, 2015, and the motion deadline is August 17, 2015. The jury trial of this matter is currently scheduled for December 14, 2015.

## F.R.CIV.P 12(C) STANDARD OF REVIEW

F.R.Civ.P. 12(c) states:

**(c)** **Motion for Judgment on the Pleadings.** After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings.

**· · · · · · · · · ·**

Plaintiff Love asserts Defendant's motion for judgment on the pleadings filed herein is premature as the Court's Final Scheduling Order contains a motion deadline of August 17, 2015, and discovery remains to be completed no later than July 17, 2015. In short, the pleadings are not "closed" in this matter. However, when reviewing Rule 12(c) motions for judgment on the pleadings, courts "accept as true all facts [pled] by the non-moving party and grant all reasonable

inferences from the pleadings in favor of the non-moving party." <u>Faibisch v. Univ. of Minnesota</u>, 304 F.3d 797, 803 (8th Cir. 2002) (quoting <u>United States v. Any and All Radio Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000)); see also, <u>Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.</u>, 991 F.2d 426,428 (8th Cir.1993); <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990).  Below are facts that have been pled by Plaintiff Love in his Complaint which, if accepted as true and all reasonable inferences are granted in favor of Plaintiff, then Defendant's motion for judgment on the pleadings should be denied.

## FACTS (ACCEPTED AS TRUE) ASSERTED BY PLAINTIFF

1.      Defendant Coats in his individual and official capacities as a Commission Wildlife Officer at all times relevant hereto, unlawfully entered onto Plaintiff's property on September 23rd, 2013, without a search warrant, without probable cause, without reasonable suspicion, and without landowner permission for the sole purpose of placing one or more covert cameras on Plaintiff's property in an apparent attempt to catch Plaintiff committing a wildlife violation and/or to collect some other type of evidence that could be used to implicate Plaintiff in a wildlife violation or other crime.

2.      Defendant Coats returned to Plaintiff's property on September 30th and October 12th, 2013 and again unlawfully entered onto Plaintiff's property without a search warrant, without probable cause, without reasonable suspicion, and without landowner permission to check the covert cameras and adjust the angle of the covert cameras.  On October 23rd, 2013, Defendant Coats unlawfully entered onto Plaintiff's property without a search warrant, without probable cause, without reasonable suspicion, and without landowner permission to remove the covert cameras from Plaintiff's property.  At all times during these periods, Defendant Coats

trespassed onto Plaintiff's property and invaded his privacy for the sole purpose of apprehending Plaintiff in an unlawful act, all of which were in violation of Plaintiff's constitutional rights against unlawful searches and seizures.

3.     Defendant states in his Commission Incident/Investigative Report, attached to the Complaint as Exhibit "1", that "On Monday 10-21-13 at or about 19:05 hours I, Wildlife Officer Coats, received a phone call from a person requesting to remain anonymous and wanting a WATS VR number. WATS VR is the Arkansas Game and Fish Commission's resource used to issue people rewards for information leading to the conviction of AGFC violators (C335 was issued to this anonymous caller). The caller told me Dr. Frank Love would be at his hunting grounds on the south side of Jackson County Rd. 4. The caller also told me Love would be there early in the morning, driving his silver pickup and would be deer hunting with a 7MM Magnum rifle. The caller was unable to tell me if Love would be wearing hunter orange or not." Defendant Coats never questioned the veracity or motive of the alleged informant nor did Defendant Coats at any time attempt to substantiate the information allegedly provided by the informant.

4.     On October 22nd, 2013, at approximately 5:00 A.M., Defendant Coats returned to Plaintiff's property when, according to Exhibit "1", "At or about 08:41 hrs I heard a distinct rifle shot come from my South West. I moved on foot through the field to the north of Jackson 4 until I could view Love's easement directly to the south………I was able to see the silver pickup still parked with the ATV in the bed.  I continued to watch the length of the easement waiting for the hunter to return to the vehicle, **anticipating him to be carrying a harvested deer**." (Emphasis Added)

5.      Defendant Coats then reported in Exhibit "1" that "At or about 09:02 hrs. ….. I observed the hunter carrying a black synthetic rifle with a brushed stainless steel barrel, walking north on the easement towards the silver truck." It is undisputed Defendant Coats never witnessed a harvested deer in Plaintiff's possession or on his property nor did Defendant Coats ever personally eyewitness Plaintiff shoot at a deer.

6.      To the contrary, Defendant Coats reported in Exhibit "1" that when confronted Plaintiff voluntarily stated to him **"that shot was just me, I'm hog hunting."** (Emphasis Added) Defendant Coats and the Commission have conceded that, on private land, feral hogs may be killed or trapped year-round, night or day, by a landowner or anyone with the landowner's permission.  No hunting license is required of the landowner and the landowner may kill feral hogs by any method on private property.  In fact, the Commission has gone to great lengths not to promulgate regulations concerning feral hogs on private property and the Commission's official position is that feral hogs are not wildlife, thus not subject to the Commission's jurisdiction.

7.      Notwithstanding Plaintiff's statement that he was hog hunting on his private property, Defendant Coats unlawfully and maliciously handcuffed, arrested and transported Plaintiff to the Jackson County Jail where he was booked in violation of his constitutional rights.  Additionally, Plaintiff's vehicle, weapon, ATV and other items of personal property were unlawfully seized and held for an unreasonable length of time in violation of his constitutional rights.  Defendant Coats' unlawful and malicious arrest of Plaintiff and seizure of his property were without justifiable facts, reasonable suspicion or probable cause.  Defendant Coats' excessive use of force, subsequent arrest and booking of Plaintiff were malicious and recklessly

indifferent to Plaintiff's health and safety, and caused him great mental anguish and emotional distress.

8.      On or about October 29th, 2014, Defendant Coats, the Commission and the State of Arkansas charged Plaintiff with violations of Commission Code 05.01 (Hunting Wildlife/Deer in Closed Season Prohibited), Commission Code 06.03 (Certain Firearms Prohibited During Muzzleloader/Deer Season), and Commission Code 05.28 (Refusing Inspection by a Wildlife Officer).

9.      To defend himself, Plaintiff hired local counsel, Mr. Joseph Phillip James of James & James, Attorneys at Law, in Newport, Arkansas, who on November 15, 2013, entered not-guilty pleas on behalf of Plaintiff for all three (3) violations.

10.     On January 8, 2014, a bench trial was held in Jackson County District Court, Newport Division, before the Honorable John D. Eldridge III. The State was represented by the Honorable Steven G. Howard, Jackson County Deputy Prosecuting Attorney, and Plaintiff was represented by Mr. Joseph Philip James. In summary, Defendant Coats testified under oath that Plaintiff was, in fact, hunting deer on his private property in a closed season and with a prohibited weapon.  Defendant Coats also testified that Plaintiff was not able to produce proper identification (which is not required when hog hunting). Plaintiff testified that he was trying to kill hogs on his private property which did not require a license and hogs could be taken at any time by any method.  At the end of the bench trial, Judge Eldridge took the matter under advisement.

11.     On February 20, 2014, Judge Eldridge issued a letter opinion in which he ruled in the case of "Frank C. Love, Case No. CR-13-3008, 3009 & 3010.  All three dockets are enclosed

on which I have made not guilty findings in connection with 308 and 309.  I have found the defendant guilty of refusing inspection in Docket No. 3010 and fine him $240.00, the customary suggested amount."

12.     Plaintiff Love timely appealed the one conviction of refusing inspection to the Circuit Court of Jackson County, Arkansas and the case was styled State of Arkansas v. Frank Love, Jackson County Circuit Court No. CR-14-15.  Wildlife Attorneys of Arkansas, PLLC, by the undersigned counsel entered their appearance in that proceeding and commenced defending the remaining charge against Plaintiff which was violating Commission Code 05.28 (Refusing Inspection by Wildlife Officer).

13.     On May 28th, 2014, Plaintiff's counsel filed two (2) motions which were a Motion to Reveal Identity of Confidential Informant, in addition to a Motion to Declare Arkansas Game and Fish Regulation 5.28 Unconstitutional.  A hearing was scheduled on Plaintiff's Motions for June 26th, 2014, in Newport, Arkansas.

14.     On June 13th, 2014, Jackson County Deputy Prosecuting Attorney Stephen G. Howard faxed a letter to Plaintiff's counsel stating that "Arkansas Game and Fish would like to nolle pros the remaining charge in return for Love's signature on the enclosed Release Agreement, which was prepared by them [Commission]." (Emphasis Added) Plaintiff had no objection to the State's nolle prosequi of the remaining charge against him, however he was not required by any state or federal law to sign a Release Agreement and, therefore, he did not sign the Release Agreement.

15.     On June 26th, 2014, Plaintiff and his counsel appeared at the motion hearing scheduled for 9 a.m. in Newport, Arkansas, prepared to argue both motions.  Mr. James F.

Goodhart and Ms. Jennifer Jameson McKendree appeared for the Commission and Ms. McKendree argued the motions in place of DPA Howard.   The Circuit Judge heard the constitutional issue first and held that Commission Code 05.28 was not unconstitutional in this particular case. On the second motion to reveal the identity of the confidential informant, Plaintiff's counsel and the Circuit Judge pressed Commission counsel for information on the identity of the confidential informant. Commission counsel was forced to admit that nothing existed regarding the identity, address, phone number or any other information on the confidential informant.   Any and all information in possession of Defendant Coats and the Commission concerning the alleged confidential informant had apparently disappeared and nothing was produced at the hearing or thereafter. Upon the conclusion of this hearing, several days later, the State and the Commission chose to voluntarily nolle prosequi the remaining charge against Plaintiff without the requirement of a signed Release Agreement.

16.    The actions by Defendant and the Commission in investigating Plaintiff with covert cameras without a search warrant, trespassing and invading his privacy, unlawfully arresting, falsely imprisoning and maliciously prosecuting Plaintiff were recklessly indifferent and excessive, and intended to cause great mental, physical and financial hardship to Plaintiff, from all of which Plaintiff continues to suffer. The deliberate indifference, recklessness and excessiveness herein are in accordance with the customs, policies and procedures of the Arkansas Game and Fish Commission.

17.    Upon information and belief, it is asserted that this Defendant and the Commission had a history with Plaintiff that caused Defendant and the Commission to want to

get Plaintiff arrested as retribution for previous complaints Plaintiff had made against the Commission.

18.     Upon information and belief, it is asserted that Defendant and the Commission have attempted to cover up what actually happened at all times relevant hereto and continue to cover up what happened before, during and after Plaintiff was subjected to the actions of Defendant and the Commission.

## ARGUMENT

## I.   QUALIFIED IMMUNITY DOES NOT SHIELD DEFENDANT FROM LIABILITY UNDER THE FACTS VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF.

Qualified immunity shields government officials from liability so long as the official has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because vicarious liability is inapplicable to §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Therefore, "each Government official, his or her title notwithstanding, is only liable for his or her misconduct. *Id.* at 1949.  To overcome the defense of qualified immunity the plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Howard v. Kansas City Police Dept., 570 F.3d 984, 988 (8th Cir. 2009).

Plaintiff has asserted in his Complaint that on June 26th, 2014, Plaintiff and his counsel

appeared at a motion hearing scheduled for 9 a.m. in Newport, Arkansas, prepared to argue pending motions.  Mr. James F. Goodhart and Ms. Jennifer Jameson McKendree appeared for the Commission and Ms. McKendree argued the motions in place of DPA Howard.  The Circuit Judge heard the constitutional issue first and held that Commission Code 05.28 was not unconstitutional in this particular case. <u>On the second motion to reveal the identity of the confidential informant, Plaintiff's counsel and the Circuit Judge pressed Commission counsel for information on the identity of the confidential informant. Commission counsel was forced to admit that nothing existed regarding the identity, address, phone number or any other information on the confidential informant.</u> (Emphasis Added) Any and all information in possession of Defendant Coats and the Commission concerning the alleged confidential informant had apparently disappeared and nothing was produced at the hearing or thereafter. Upon the conclusion of this hearing, several days later, the State and the Commission chose to voluntarily nolle prosequi the remaining charge against Plaintiff without the requirement of a signed Release Agreement.

Among other averments, Plaintiff asserts no probable cause existed for his arrest due to the questionable confidential informant, if one existed at all.  If no confidential informant existed or the confidential informant was somehow personally connected to or acquainted with Defendant, then the entire basis for Defendant to be on Plaintiff's property has evaporated and Plaintiff's subsequent arrest was unlawful. It is an undisputed fact that Defendant through Commission counsel was unable to produce at the Circuit Court level any information on the identity of the confidential informant or other relevant information about the confidential informant.   Plaintiff has a "clearly established statutory or constitutional right of which a

reasonable person should have known," to not be subjected to an unlawful arrest the basis of which is potentially fabricated confidential information. Harlow, *supra.*

Additionally, Plaintiff asserted in his Complaint that when confronted Plaintiff voluntarily stated to him [Defendant] "that shot was just me, I'm hog hunting." Defendant Coats and the Commission have conceded that, on private land, feral hogs may be killed or trapped year-round, night or day, by a landowner or anyone with the landowner's permission.  No hunting license is required of the landowner and the landowner may kill feral hogs by any method on private property.  In fact, the Commission has gone to great lengths not to promulgate regulations concerning feral hogs on private property and the Commission's official position is that feral hogs are not wildlife, thus not subject to the Commission's jurisdiction.

Notwithstanding Plaintiff's statement that he was hog hunting on his private property, Defendant Coats unlawfully and maliciously handcuffed, arrested and transported Plaintiff to the Jackson County Jail where he was booked in violation of his constitutional rights.  Additionally, Plaintiff's vehicle, weapon, ATV and other items of personal property were unlawfully seized and held for an unreasonable length of time in violation of his constitutional rights.  Defendant Coats' unlawful and malicious arrest of Plaintiff and seizure of his property were without justifiable facts, reasonable suspicion or probable cause.  Defendant Coats' excessive use of force, subsequent arrest and booking of Plaintiff were malicious and recklessly indifferent to Plaintiff's health and safety, and caused him great mental anguish and emotional distress.

Under the Second Amendment to the United States Constitution and Amendment 88 to the Arkansas Constitution, Plaintiff at all relevant times hereto had a clearly established federal constitutional right to discharge lawful weapons on his property and, additionally, Plaintiff had a

clearly established state constitutional right to kill feral hogs on his property, all of which should be free from governmental interference. Once Plaintiff informed Defendant that he was killing hogs on his private property with a lawful weapon, then that should have been the end of the investigation and Plaintiff should have been allowed to go about his business. Defendant conceded that he heard only one shot and never saw Plaintiff actually shoot at a deer nor harvest a deer.  Simply put, Plaintiff was not deer hunting, there was no probable cause for his arrest, and he never should have been arrested, taken to jail, his property confiscated, and prosecuted in violation of his constitutional rights for something he did not and would not do.

## II.   THE OPEN FIELDS DOCTRINE DID NOT PERMIT A WARRANTLESS SEARCH OF PLAINTIFF'S PRIVATE, POSTED PROPERTY USING COVERT CAMERAS PRIOR TO HIS ARREST.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. United States v. Douglas, 744 F.3d 1065 (8th Cir. 2014).  Since Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the touchstone of [Fourth Amendment] analysis has been the question of whether a person has a constitutionally protected reasonable expectation of privacy. Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (quoting Katz, 389 U.S. at 360, 88 S.Ct. 507 (Harlan, J., concurring)).  To meet Plaintiff's "burden of proving he had a legitimate expectation of privacy that was violated by the challenged search and seizure," Plaintiff must establish (1) he himself "asserted a subjective expectation of privacy" in the place searched or object seized," and (2) his "subjective expectation is objectively reasonable." United States v. Kiser, 948 F.2d 418, 423 (8th Cir.1991).

12

Plaintiff has asserted in his Complaint that Defendant Coats in his individual and official capacities as a Commission Wildlife Officer at all times relevant hereto, unlawfully entered onto Plaintiff's property on September 23rd, 2013, without a search warrant, without probable cause, without reasonable suspicion, and without landowner permission for the sole purpose of placing one or more covert cameras on Plaintiff's property in an apparent attempt to catch Plaintiff committing a wildlife violation and/or to collect some other type of evidence that could be used to implicate Plaintiff in a wildlife violation or other crime. Defendant Coats returned to Plaintiff's property on September 30th and October 12th, 2013 and again unlawfully entered onto Plaintiff's property without a search warrant, without probable cause, without reasonable suspicion, and without landowner permission to check the covert cameras and adjust the angle of the covert cameras.  On October 23rd, 2013, Defendant Coats unlawfully entered onto Plaintiff's property without a search warrant, without probable cause, without reasonable suspicion, and without landowner permission to remove the covert cameras from Plaintiff's property.  At all times during these periods, Defendant Coats trespassed onto Plaintiff's property and invaded his privacy for the sole purpose of apprehending Plaintiff in an unlawful act, all of which were in violation of Plaintiff's constitutional rights against unlawful searches and seizures.

Plaintiff denies that Defendant had an absolute right under the open-fields doctrine to enter and search without a warrant Plaintiff's private, posted property and place covert cameras on the property when no unlawful hunting activities were occurring at the time.  Clearly, Plaintiff has asserted in his Complaint a "subjective expectation of privacy" in this property by lawfully posting the property pursuant to Arkansas state law. Individuals are allowed on Plaintiff's property only with his explicit permission.  Additionally, Plaintiff's "subjective expectation is

objectively reasonable." It is objectively reasonable for any landowner who has properly posted private property to have an expectation of privacy that includes being free from the placement of covert cameras on the property without probable cause and a search warrant. Assuming, *arguendo*, that Plaintiff could enter Plaintiff's property pursuant to the open-fields doctrine, the right would in no way include the right for Defendant to place covert cameras of the property without a search warrant.

## III. QUALIFIED IMMUNITY DOES NOT ELIMINATE THE PENDENT STATE COURT CLAIMS AND DEFENDANT'S POST-ARREST PROCEDURES WERE IMPROPER.

The District Court has the power to exercise pendent jurisdiction in this case because substantial federal claims have been alleged providing the primary basis for jurisdiction, and the state law claims are derived from the same "nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Travis v. Anthes Imperial Limited, 473 F.2d 515 (1973). Pendent jurisdiction should, as a matter of discretion, be exercised where considerations of judicial economy and the best interests of the parties in terms of fairness and convenience compel the conclusion that all claims should be heard in one proceeding. See, Drachman v. Harvey, 453 F.2d 722 (2nd Cir. 1971), reversed on rehearing, 453 F.2d 736, 738 & n.4 (1972) (en banc). Plaintiff asserts his pendent state court claims obviously arise out of the same "nucleus of operative fact." Considerations of judicial economy and the best interests of the parties in terms of fairness of convenience are additional factors that dictate all claims should be heard in the present proceeding. Furthermore, qualified immunity should not shield the pendent state court claims for the same reasons qualified immunity should not

14

shield Defendant from the federal court claims.

Defendant's post-arrest procedures were improper, unnecessary, excessive, reckless and deliberately indifferent to Plaintiff's constitutional rights.  Defendant violated Commission practices and procedures when he unlawfully arrested Plaintiff (instead of simply issuing a citation), confiscated his truck, 4-wheeler and all other personal property, and transported him to the Jackson County jail for booking.  Defendant's actions were inconsistent with Commission procedures for similar incidents of this nature and Plaintiff asserts he was treated differently because of Defendant's pre-determination to convict Plaintiff of a wildlife violation. Citizens of the State of Arkansas are rarely, if ever, transported to jail solely for purposes of a wildlife violation. The facts asserted by Plaintiff are overwhelming that his conduct did not necessitate the excessive and improper actions taken by Defendant prior to and subsequent to Plaintiff's unlawful arrest.

## **CONCLUSION**

Plaintiff Love asserts Defendant's motion for judgment on the pleadings should be denied as premature since the Court's Final Scheduling Order contains a motion deadline of August 17, 2015, and discovery remains to be completed no later than July 17, 2015.  In short, the pleadings are not "closed" in this matter. Additionally, qualified immunity does not shield Defendant from liability for the asserted federal and state claims under the facts asserted herein when viewed in the light most favorable to Plaintiff.  Defendant's abuse of the confidential informant process and placing covert cameras on Plaintiff's private property without a search warrant or probable cause violated Plaintiff's constitutional rights. The open-fields doctrine did not allow Defendant to enter Plaintiff's private, posted property without a search warrant for the purpose of placing

15

covert cameras on the property.  Defendant's arrest and subsequent prosecution of Plaintiff were unnecessary, excessive and intended to cause Plaintiff great physical, mental and financial hardship.  For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings should be denied.

WHEREFORE, Plaintiff, Frank C. Love, respectfully prays this Honorable Court enter an Order denying the Motion for Judgment on the Pleadings; for attorney's fees and costs expended herein; and for any and all other just and proper relief to which Plaintiff may be entitled.

Respectfully submitted,

FRANK C. LOVE, PLAINTIFF

By: /s/ Robert K. Jackson
Robert K. Jackson, AR Bar No. 85079
Robby Golden, AR Bar No. 2003134
Wildlife Attorneys of Arkansas, PLLC
400 West Capitol Ave., Suite 1700
Little Rock, Arkansas  72201
(501) 944-4263 - phone
(888) 830-6252 - facsimile

## CERTIFICATE OF SERVICE

I, Robert K. Jackson, certify that on this 15th day of May, 2015, the foregoing was filed electronically using the CM/ECF system, which will notify the following:

Hon. Leslie Rutledge, Attorney General
Hon. Charles Lyford, Asst. Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201-2610
Telephone: (501) 682-1307
Facsimile: (501) 682-2591

/s/ Robert K. Jackson