IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| FRANK C. LOVE | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:14CV00715 SWW |
| JONATHON COATS | * | |
| | * | |
| Defendant | * | |

**ORDER**

Plaintiff Frank C. Love ("Love") brings this action under 42 U.S.C. § 1983 against Jonathon Coats, sued in his individual capacity.[1] Before the Court is Coats's motion for judgment on the pleadings, asserting qualified immunity [ECF Nos. 14, 15], Love's response in opposition [ECF Nos. 20, 21], and Coats's reply [ECF No. 22]. After careful consideration, and for reasons that follow, Coats's motion is granted. Love's claims brought pursuant to § 1983 are dismissed with prejudice, and Love's supplemental state law claims are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

**I.**

During the events in question, Coats worked as a wildlife officer for the Arkansas Game and Fish Commission ("AGFC"), and Love owned approximately 820 acres in Jackson County, Arkansas. Love charges that Coats employed unconstitutional methods in an

---

[1] Originally, Love sued Coats in his individual and official capacities, but Love's official capacity claims were dismissed pursuant to the parties' stipulation of dismissal.

attempt to catch him committing a wildlife violation on his property and "get [him] arrested as retribution for previous complaints [he] had made against the [AGFC]."[2]

The following information is taken from the complaint and Coats's investigative report, which is attached to the complaint and cited and quoted in that pleading. On September 23, 2013, Coats placed covert surveillance cameras on Love's property, and on September 30 and October 12, 2013, he returned to check and adjust the cameras. According to Coats's incident report, on October 21, 2013, an anonymous caller informed him that early the next morning, during muzzleloader deer season, Love would arrive at his own hunting grounds in a silver truck, and he would hunt deer with a 7MM Magnum rifle.

The next morning, Coats watched Love's property, and at 6:29 a.m., he observed a silver truck pull into the entrance. After a brief period, Coats followed through the same entrance, and he spotted the silver truck, which was parked and unoccupied. Coats observed an all-terrain vehicle in the bed of the truck, and through the window, he saw several hunting items, including a box labeled 7MM REM Magnum, a blaze orange sweatshirt, and a deer skinning tool. Dense vegetation prevented Coats from seeing Love, and he waited.

At 8:41 a.m., Coats heard a rifle shot, and he watched the silver truck, anticipating that Love would return with a harvested deer. At 9:02 a.m., Coats saw Love walking toward the truck with a rifle in hand. Before Love reached his vehicle, a small buck exited a tree line. Love raised his binoculars toward the deer, and possibly spotted Coats, who was positioned directly behind the deer. Love walked briskly to his truck, placed his rifle and binoculars in the cab, and approached Coats, who was wearing a AGFC uniform with the words "WILDLIFE OFFICER"

---

[2]Compl., ¶ 25.

in bold white letters across the front and back of his vest.

Coats identified himself to Love. Love appeared angry, and he told Coats that he was trespassing and ordered him to leave. Coats told Love that he heard a shot fire, and he would not leave until he finished his investigation. Love responded that he fired a shot in the course of hunting a wild hog. Coats asked Love for his hunting license, and Love refused to comply for the stated reason that he was merely hog hunting. Coats then asked Love to hand over his driver's license, which Love was either unable or unwilling to do.

Coats asked Love whether he hit the hog, and Love responded that he missed by sixty yards. Coats inspected Love's rifle and observed that it was equipped with a powerful scope. Coats arrested Love for suspicion of hunting and handcuffed him. Upon Coats's request, a sheriff's deputy arrived at the scene, uncuffed Love's hands, and transported him to the county jail. Coats also called a towing service to take Love's truck, and he searched and inventoried the vehicle after the towing service arrived at the scene.

With the assistance of additional wildlife officers and a K-9 unit, Coats searched Love's property for the deer that had appeared earlier. The officers found a tree stand and a 7MM REM casing, which smelled of gun powder, at the base of the tree. The officers also spotted numerous fresh deer tracks, but they did not locate a deer or blood, nor did they see any signs of hogs on the property.

After his arrest, Love was released and charged with violating three AGFC regulations: (1) hunting wildlife in closed season, in violation of AGFC Code No. 05.01; (2) bearing a prohibited firearm during muzzleloader season, in violation of AGFC Code No. 06.03; and (3)

refusing inspection by a wildlife officer, in violation of AGFC Code No. 05.28.[3]  Love pleaded not guilty to the aforementioned charges, which proceeded to a bench trial in the Jackson County District Court on January 8, 2014.  On February 20, 2014, the district judge entered a letter opinion, finding Love not guilty of hunting out of season and bearing a prohibited firearm but finding him guilty as charged for refusing inspection by a wildlife officer.

Love appealed his conviction for refusing inspection to the Jackson County Circuit Court, and he filed a motion for an order directing the AGFC to reveal the identity of the confidential informant referenced in Coats's investigative report.  Before a hearing could be held on the motion, AGFC offered to dismiss the remaining charge against Love, provided that he enter a release agreement.  Love declined to sign a release.  During a hearing held June 16, 2014, the AGFC acknowledged that it had no information regarding the identity, address, or phone number of the confidential informant.  After the hearing, the State nolle prossed the remaining charge against Love, without requiring that he sign a release.

On December 5, 2014, Love commenced this action pursuant to 42 U.S.C. § 1983, charging that Coats deprived him of due process and subjected him to a series of unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments.  Love also brings supplemental claims under state law, charging Coats with unlawful arrest, false imprisonment, malicious prosecution, invasion of privacy, intentional infliction of emotional distress, conversion, negligence, and defamation.

---

[3]Violations of AGFC regulations are misdemeanors under Arkansas law.  *See State v. Herndon,* 365 Ark. 185, 187, 226 S.W.3d 771, 773 (2006).

**II.**

The standards of review for motions to dismiss under Fed. R. Civ. P 12(b)(6) and motions for judgment on the pleadings under Fed. R. Civ. P 12(c) are identical.[4] *McIvor v. Credit Control Servs., Inc*., 773 F.3d 909, 912–13 (8th Cir. 2014). The complaint should be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

A complaint cannot, however, simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id.* at 1968. Rather, the facts set forth in the complaint must be sufficient to nudge the claims "across the line from the conceivable to plausible." *Id*. at 1974. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal* 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009)(quoting Fed. R. Civ. P. 8(a)(2)).

**III.**

Coats contends that he is entitled to dismissal of Love's § 1983 claims on the basis of qualified immunity, which protects government employees, sued in their individual capacities, "'from liability for civil damages insofar as their conduct does not violate clearly established

---

[4]Motions under Rules 12(b)(6) and 12(c) challenge the legal sufficiency of the opposing party's pleading. However, unlike a 12(b)(6) motion, a 12( c) motion is submitted after the pleadings have been closed.

statutory or constitutional rights of which a reasonable person would have known.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011)(quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009)).  In deciding whether Coats is entitled to qualified immunity at this juncture, the Court must determine whether Love has stated a plausible claim for violation of a constitutional right and whether the right was clearly established at the time of the alleged violation.  *See Hager v. Arkansas Dept. of Health,* 735 F.3d 1009, 1013-1014 (8th Cir. 2013). Unless the answer to both of these questions is yes, Coats is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009).

The Court first considers Love's claim that Coats engaged in a series of unreasonable searches. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  To succeed with an unreasonable search claim, Love has the burden to prove that he had a legitimate expectation or privacy in the place searched, and it is well established that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields." *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446 (1924); *see also Oliver v. United States,* 466 U.S. 170, 178, 104 S.Ct. 1735, 1741 (1984)(reaffirming the "open fields" doctrine, "that an individual may not legitimately demand privacy for activities conducted out of doors . . . except in the area immediately surrounding the home").

Love does not claim that his property included a home or dwelling or that the complained-of conduct occurred in an area surrounding such a structure.  Instead, Love's

allegations confirm that he used his land for farming and hunting and that the area where the search took place qualifies as an "open field" as that term is used in construing the Fourth Amendment.[5] Love argues that the open fields doctrine did not permit Coats to place surveillance cameras on his property. The Court disagrees. Whether Coats viewed Love's property in person, with his own eyes, or with the use of a surveillance camera is of no consequence. Because the surveillance took place in an open field, Coats was free to install cameras on Love's property without violating the Fourth Amendment. *See United States v. Vankesteren*, 553 F.3d 286 (4th Cir. 2009), *cert. denied*, 129 S. Ct. 2743, 174 L. Ed. 2d 248 (2009)(finding no Fourth Amendment violation when a state wildlife officer used hidden video camera to record illegal trapping of wild life on property classified as an open field).

The Court next considers Love's unreasonable seizure claims. Detaining a person for investigative purposes is reasonable under the Fourth Amendment if the officer has reasonable suspicion that criminal activity may be afoot. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968)). Fourth Amendment reasonableness is largely an objective inquiry, and the question is whether the facts, viewed objectively, justify the challenged action. *See Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011). A determination of objective reasonableness is not to be made in hindsight, but by looking to what the officer reasonably knew at the time. *See U.S. v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007)(citing *United States v. Washington,* 455 F.3d 824, 826 (8th

---

[5]For purposes of the Fourth Amendment, "an open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742 (1984). Even a thickly wooded area nonetheless may be an open field in the Fourth Amendment context. *See id.*

Cir.2006)). Additionally, an officer's actual motivation is irrelevant in determining the validity of an arrest. *Id.* (citing *Whren v. United States,* 517 U.S. 806, 813 (1996)).

Here, Coats observed Love with a modern rifle during muzzleloader season, he heard a gun shot in a wooded area where Love was located, and he saw a deer exit the wooded area soon after the shot sounded. The complaint allegations demonstrate that Coats had reasonable suspicion to believe that Love was hunting out of season in violation of AGFC regulation, which justified him in questioning Love. Love's demeanor and responses to questions, his refusal to produce a hunting or driver's license, and his claim that he shot at but missed a hog from 60 feet using a scope and rifle gave Coats additional reasons to believe that Love was violating the law.

Viewing Love's allegations in a light most favorable to Love, the totality of circumstances supplied Coats with probable cause to believe that Love had violated the law. AGFC officers are empowered to make arrests for violation of the State's game and fish laws, *see* ARK. Const. amend. 35, § 8, and in making such arrests officers may conduct a search of the person or property of the accused, including his vehicle, in accordance with Rule 12.1 of the Arkansas Rules of Criminal Procedure.[6] Nor did the decision to impound and tow Love's

---

[6]Arkansas Rule of Criminal Procedure 12.1 provides:

An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:

(a) to protect the officer, the accused, or others;

(b) to prevent the escape of the accused;

(c) to furnish appropriate custodial care if the accused is jailed; or

(d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally

vehicle run afoul of the Constitution. *See United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994)(citing *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741 (1987))("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." ).

Finally, the Court turns to Love's due process claim.  Procedural due process prohibits state authorities from depriving a person of life, liberty, or property without conforming to constitutionally required procedures.  Love charges that Coats abused the confidential informant process, noting that the AGFC was unable to produce any information about the informant who told Coats that Love would be hunting deer with a rifle.  The confidential informant in this case was a "tipster," who did not witness the events that gave Coats probable cause to arrest Love. "'In cases involving the "tipster" type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that disclosure is not material and therefore not required.'" *Johnson v. Wyrick,* 653 F.2d 1234, 1239 (8th Cir. 1981)(quoting *United States v. Barnes*, 486 F.2d 776, 778 n.3 (8th Cir. 1973)).  The failure to disclose the identity of the confidential informant in this case simply did not amount to a deprivation of procedural due process.

Outrageous conduct on the part of law enforcement authorities that "shocks the conscience" might violate due process even without a procedural violation.  *See Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209 (1952).  However, the level of

---

possessed or used in conjunction with the offense.

Ark. R. Crim. P. 12.1

"outrageousness" needed to prove a deprivation is very high.[7]  Coats's alleged conduct in this

case does not approach the level of conscious-shocking conduct needed to prove a due process

violation, and he is entitled to qualified immunity on this claim.

**IV.**

For the reasons stated, the Court finds that Love has failed to allege facts sufficient to

state a plausible claim that Coats violated his constitutional rights and that Coats is entitled to

qualified immunity.  Because the Court finds no issues for trial with respect to claims over which

it has original jurisdiction, those claims will be dismissed with prejudice, and the Court will

dismiss Love's supplemental state law claims, without prejudice.   *See* 28 U.S.C.

§ 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim .

. . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . . ").

IT IS THEREFORE ORDERED that Defendant's motion for judgment on the pleadings

[ECF No. 14] is GRANTED.  Plaintiff's claims arising under federal law are DISMISSED

WITH PREJUDICE, and  Plaintiff's supplemental state law claims are DISMISSED WITHOUT

PREJUDICE.  Pursuant to the judgment entered together with this order, this action is

DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED THIS 30TH DAY OF JUNE,  2015.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[7]For example, in *Gunderson v. Schlueter*, 904 F.2d 407 (8th Cir. 1990) a conservation officer, motivated by a personal vendetta against a resort owner, carried out a relentless undercover operation that lead to criminal charges against the resort owner.  The Eighth Circuit acknowledged that the officer's conduct, while "objectionable and perhaps born of personable animosity" did not rise to the level of a due process violation.  *Gunderson*, 904 F.2d at 410-411.